IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER LOWY,

        Plaintiff,

  v.

INTERNAL REVENUE SERVICE,

        Defendant.

_____/

No. C 10-00767 SI

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND LIMITED DISCOVERY**

On January 21, 2011, the Court heard argument on defendant IRS's motion for summary judgment and plaintiffs' cross-motion for summary judgment and, in the alternative, for limited discovery. Having considered the arguments of counsel and the papers submitted, and for the reasons set forth below, the Court hereby DENIES defendant's motion for summary judgment and DENIES plaintiffs' motion for summary judgment and, in the alternative, for limited discovery. The defendant must supplement its submissions with additional information as detailed below to allow the Court to rule on the adequacy of the *Vaughn* index and claimed withholdings.

**BACKGROUND**

On February 23, 2010, plaintiffs Peter Lowy, Janine Lowy ("Lowys"), and the Beverly Park Corporation, for which Peter Lowy serves as the President and Chief Executive Officer, filed this complaint under the Freedom of Information Act ("FOIA") seeking to compel defendant Internal Revenue Service ("IRS") to immediately produce all records responsive to two October 15, 2008 FOIA requests, to conduct another search for additional responsive records, and a declaration from this Court that the IRS's withholding of 7,109 pages of responsive records and any segregable portions thereof was

unlawful.

In the winter of 2007, the IRS sent three letters to plaintiffs: (1) an October 31, 2007 letter notifying the Lowys that their 2005 tax return was selected for examination, (2) a November 1, 2007 letter notifying plaintiff Beverly Park Corporation that its 2005-06 tax return was selected for examination, and (3) a December 12, 2007 letter requesting information from the Beverly Park Corporation in accordance with Article 25 of the Double Taxation Convention between the United States and Australia. *See* Complaint, Ex. A.

In response, plaintiffs sent two FOIA requests to defendant on October 15, 2008, one from the Lowys and one from Beverly Park Corporation. *Id.* Both requests asked for four categories of records: (1) all records documenting communications between the Australian Taxation Office ("ATO") and/or the Australian Government, and the IRS which relate in any way to plaintiffs; (2) all records relating to (a) communications from the IRS to plaintiffs, (b) the United States Senate Permanent Subcommittee on Investigations' ("SPSI") inquiry into tax haven banks and United States tax compliance, in so far as the records relate to plaintiffs, and (c) the request from the ATO to the IRS referred to in the IRS's December 12, 2007 letter; (3) all records documenting communication between the IRS and the SPSI relating to plaintiffs; and (4) the names of all third parties that the IRS contacted in connection with their examination into the tax affairs of plaintiffs. *Id.* Plaintiffs' letters identified various officers and divisions of the IRS where responsive tax documents might be located, including IRS agents Wendy Lee and Hoa Nguyen who were involved in the tax examination of plaintiffs. *Id.*

The IRS searched for responsive documents and on July 23, 2009, submitted a response to plaintiffs indicating that 12,034 pages of responsive documents were located. Compl., Ex. B. Of that total, the IRS, through its Disclosure Office, released 4,925 pages in full, and withheld 7,109 pages pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(7)(A) and (C). *Id.* On August 24, 2009, plaintiffs filed an administrative appeal. Compl., Ex. C. On December 21, 2009, Donna DeWeese, Appeals Team Manager, upheld the decision of the Disclosure Office. Hartford Decl., at ¶ 7.

Plaintiffs filed this action on February 23, 2010. *Id.* at ¶ 8. The complaint states three causes of action: (1) failure to provide responsive records under FOIA, (2) failure to provide any reasonably segregable portion of responsive records, and (3) failure to conduct an adequate search for responsive

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

records.  Compl., pg. 6.  After the case was filed, additional documents were released by the IRS, including 338 documents on September 16, 2010 and 142 pages on November 3, 2010.  Banerjee Decl., at ¶ 2; Second Banerjee Decl., at ¶¶ 3-4.  The IRS indicates an additional 162 pages bearing the prefix "IRS" and 139 pages bearing the prefix "LOWY" were to be released on December 6, 2010.  Second Banerjee Decl., at ¶ 4, Hartford Decl., at ¶20.

On October 8, 2010, defendant filed for summary judgment.  Plaintiffs responded on November 8, 2010, opposing defendant's motion, and filing a cross-motion for summary judgment or, in the alternative, for limited discovery.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party.  *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim.

*See National Wildlife Federation v. United States Forest Service*, 861 F.2d 114 (9th Cir. 1988).  The government agency bears the ultimate burden of proving that a particular document falls within one of the nine statutory exceptions to the disclosure requirement.  *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).  The government may submit affidavits to satisfy their burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 742) (9th Cir. 1980)).  The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

## DISCUSSION

### I.    The Adequacy of the IRS's Search

####    A.    The IRS's Search and Production of Responsive Documents

The IRS has submitted twelve declarations which detail the steps that the IRS took in response to plaintiffs' FOIA requests.[1]  The search process was overseen first by Glendsey Tucker ("Tucker"), a disclosure specialist with the IRS, and later transferred to Kathleen Brewer ("Brewer"), a senior

---

[1] Accompanying defendant's October 8, 2010 Motion for Summary Judgment ("Def. MSJ") were declarations from (1) Glendsey Tucker, Disclosure Specialist, (2) Kathleen Brewer, Senior Disclosure Specialist, (3) James Hartford, an attorney in Branch 6 of the Office of the Associate Chief Counsel (Procedure & Administration), (4) Douglas O'Donnell, Director of Competent Authority and International Coordination in the Large Business and International Division, (5) Marie Allen, Supervisory Revenue Agent; and (6) Carmen Banerjee, counsel for defendant. *See* Docket No. 24. Accompanying defendant's December 3, 2010 Reply to Motion for Summary Judgment and in Opposition to Cross-Motion for Summary Judgment ("Def. Reply") and a December 6, 2010 Appendix re Motion for Summary Judgment were declarations from (7) Wendy Lee, Revenue Agent, (8) John McDougal, Special Trial Attorney with the Office of Chief Counsel, (9) James Carroll, Program Manager for Exchange of Information and Overseas Operations in the Large Business and International Division, and second declarations from (10) Carmen Banerjee, (11) Glendsey Tucker, and (12) John Hartford. *See* Docket Nos. 33-36.

Plaintiffs dispute the veracity of some of these declarations, yet they provide no contrary evidence. *See, e.g.,* Pls.' Oppo. to Def. MSJ, and Notice of Cross-Motion 17:21-24 ("Pls.' Cross-Mot.") ("[T]he idea that Agent Lee prepared a detailed index of each document in her possession . . . when more than 10,000 pages are involved is difficult to believe.  The idea that any other potential custodians would sit down and compare this detailed index to each of their own documents is even more difficult to believe."); Pls.' Reply ("[T]he notion that anyone–Ms. Lee or otherwise–took the time to compare each document against Lee's detailed spreadsheet of all the documents in Ms. Lee's possession is difficult to believe.").

United States District Court

For the Northern District of California

disclosure specialist.  Tucker Decl., ¶¶ 1, 17.  Tucker was assigned to process plaintiffs' October 15, 2008 FOIA requests on October 28, 2008.  *Id*. at ¶ 4.  She first searched the Integrated Data Retrieval Service ("IDRS"), the IRS's "primary resource for researching current taxpayer account information," using plaintiffs' taxpayer identification numbers ("TIN").  *Id*. at ¶¶ 5-6.  IDRS contains information pertaining to returns filed by taxpayers and information submitted with respect to taxpayers by third parties (for example, W-2 forms, 1099 forms, etc.).  *Id*. at ¶ 6.  Tucker did not search any other IRS databases, as "Disclosure Personnel" do not have access to them.  Second Tucker Decl., ¶ 6.  Based upon the IDRS search and the individuals named in plaintiffs' request letters, Tucker and her manager, Stephanie Brown ("Brown"), forwarded the FOIA request and search memoranda to those "IRS employees identified as potentially possessing documents responsive to the FOIA requests."  Tucker Decl., at ¶ 8.  One of the employees contacted, Wendy Lee ("Lee"), who was also in charge of handling the tax examination of plaintiffs, created a spreadsheet index of responsive documents to coordinate with the other agents, so as to avoid duplicates.  *Id.* at ¶ 10; Lee Decl., ¶ 3.

After distributing the spreadsheet index to the other employees,[2] the employees responded with any non-duplicate responsive documents they possessed, which Lee then added to the spreadsheet.  Lee Decl., at ¶ 6; Tucker Decl., at ¶¶ 11-13.  Tucker spoke with John McDougal ("McDougal") and Hoa Nguyen ("Nguyen") and confirmed that neither had non-duplicative documents.  Tucker Decl., at ¶ 12-13.  On April 27, 2009, Lee sent nine binders containing  responsive documents to Tucker.  *Id.* at ¶ 14.  On April 29, 2009, she sent an additional binder for a total of ten binders.  *Id*. at ¶ 15.  These included documents Lee herself possessed in addition to those she had received from other employees.  *Id*. at ¶¶ 14-15.

On April 30, 2009, the processing of the FOIA requests was transferred from Tucker to Brewer.  Brewer Decl., ¶¶ 1, 4.  Upon review of Tucker's case notes,  Brewer decided that Tucker's search was adequate, and she did not conduct any further search for responsive documents.  *Id.* at ¶ 6.  Brewer continued to receive binders from Lee, receiving an additional fourteen binders on May 1, 2009 and a final two binders on July 20, 2009, for a total of twenty-six binders containing responsive documents.

---

[2] The following individuals were contacted: Hoa Nguyen, Bill Raimondi, John McDougal, Carolyn Schenck, Chu Pak, Alan Astengo, and Joni Troncoso.  Lee Decl., ¶ 5.

United States District Court
For the Northern District of California

*Id.* at ¶ 7.  Brewer reviewed the documents and determined that twelve of the twenty-six binders should be released and fourteen should be withheld.  *Id.* at ¶ 8.  Brewer then prepared a response letter that Disclosure Manager Brown signed and sent to plaintiffs, stating that 4,925 pages were being released in full and 7,109 pages were being withheld in full pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(7)(A) and (C).  *Id.* at ¶¶ 9-10.

On August 5, 2010, subsequent to the filing of this lawsuit, James G.  Hartford ("Hartford") was assigned as the IRS's attorney to assist the Department of Justice (DOJ) in connection with this action. *Id.* at ¶ 2.  Hartford conducted a further search for documents.  Hartford Decl., at ¶¶ 11-16. Specifically, on or about September 1, 2010, Hartford contacted Lee to ask about SPSI documents.  *Id.* at ¶ 13.  Lee told Hartford that she was unaware of such documents and to contact attorney John McDougal ("McDougal") of the Small Business/Self-Employed Division, due to his contact with the SPSI.  *Id.*  On or about September 7, 2010, Hartford contacted McDougal, who informed Hartford that he had no contact with the SPSI regarding plaintiffs and that the documents he had that related to the SPSI did not relate to plaintiffs.  *Id.* at ¶ 14.  McDougal sent Hartford these documents, which Hartford then confirmed were unrelated to plaintiffs.  *Id.* at ¶¶ 15-17.  On September 10, 2010, Hartford contacted Floyd Williams, director of the Office of Legislative Affairs ("OLA") requesting that the OLA search for responsive documents.  *Id.* at ¶ 18.  On September 13, 2010, the OLA indicated that there were no responsive records.  *Id.* at ¶ 20.  Mr.  McDougal declared that it was his belief that no materials relating to the Lowy examination were transmitted from the IRS to the SPSI and that no materials were transmitted from the SPSI to the IRS, other than those published as part of the public hearing record. *See* McDougal Decl., ¶¶ 10-11.

During Hartford's September 7, 2010 conversation with McDougal, he learned that there were certain documents that Lee had, including e-mails, but that he was unsure whether they had been released or were being withheld.  Hartford Decl., at ¶ 21.  On September 10, 2010, Hartford contacted Lee, who informed him that she believed the e-mails were sent to the Disclosure Office.  *Id.* at ¶¶ 22-23. Hartford did not recall seeing those e-mails, so he requested that Lee forward copies of the documents for review.  *Id.* at ¶ 23.  On September 15, 2010, Lee forwarded approximately 2,000 pages of documents to Hartford, who determined 447 pages to be responsive.  *Id.* at ¶ 24.  Hartford then sent the

responsive documents to colleagues to review them for the applicability of FOIA exemptions. *Id*.

In addition to the 447 pages from Lee that Hartford determined to be responsive, Hartford received 7,611 pages from the Disclosure Office. *Id*. at ¶ 26. Of these documents, Hartford determined that 222 pages labeled as "withhold in full" were non-responsive to the FOIA request. *Id*. Hartford could not ascertain why there was a 280 page discrepancy between the 7,109 pages the Disclosure Office informed plaintiffs it was withholding and the 7,389 pages of responsive documents he received from the Disclosure Office that were identified as "withhold in full." *Id*. Hartford created an index of the withheld documents with information regarding the bates range, a description of the document, the total number of pages, whether the pages were redacted or withheld in full, and the exemption under which they fell. *See* Hartford Decl., Ex. A ("Initial *Vaughn* Index"); *see also* Second Hartford Decl., Ex. A ("Hartford *Vaughn* Index").[3]

### B.    The Adequacy of the IRS's Search

In responding to a FOIA request, an agency must "demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citing *Zemansky*, 767 F.2d at 571). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Zemansky*, 767 F.2d at 571 (emphasis in original). In order to demonstrate the adequacy of a search, "the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d at 1485)).

Plaintiffs challenge the adequacy of the IRS search based on four grounds. The Court addresses

---

[3]   The "*Vaughn* index" comes from the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), where the court rejected an agency's conclusory affidavit and required the agency to provide detailed support for its claimed FOIA exemptions. *Vaughn*, 484 F.2d at 826-28.

United States District Court
For the Northern District of California

each one in turn. *First*, plaintiffs claim that the IRS has failed to demonstrate that the scope of its search was reasonable because the IRS declarations do not provide sufficient details as to the method or scope of the search, and fail to indicate where the individuals searched, for example, whether their searches covered all emails, paper files, or other electronic files or databases, other than IRDS. *See* Pls.' Cross-Mot., at 16; Pls.' Reply, at 6-7. The Court, finds, however, that the declarations provided adequately explain the method and scope of the search conducted, including Tucker's initial IDRS search and her coordination with Lee who, as the agent in charge of the IRS's examinations into plaintiffs' tax affairs, was the person most likely to posses responsive documents and know of other potential custodians of responsive documents. While the IRS has acknowledged that databases other than the IDRS exist (*see* Second Tucker Decl., at ¶¶ 5-6), there is no indication – and plaintiffs provide no reason to suspect – that documents responsive to plaintiffs' FOIA requests may be referenced in those other databases and/or were not otherwise captured by Lee's search and production.

In sum, the Tucker Declarations, the Lee Declaration, the McDougal Declaration, and the Hartford Declarations provide sufficient details as to the method and scope of the search undertaken by the IRS.

*Second*, plaintiffs argue that the IRS's declarations confirm that the IRS failed to take reasonable steps to search for responsive documents. To support their argument, plaintiffs argue that the Hartford *Vaughn* index lists individuals who possessed responsive documents but who were not included within the scope of the search. Pls.' Cross-Mot. at 17-18 (identifying Barry Shott, Frank Ng, Alan Astengo, Regina Deanchan, Vivian Sloan, Joni Troncoso, and Tony Fox). Plaintiffs point out that three of these individuals – Barry Shott ("Shott"), Frank Ng ("Ng") and Alan Astengo ("Astengo") – are officials with the IRS Large and Midsize Business Division who allegedly had substantial contacts with the ATO from 2007 through 2008 regarding plaintiffs, and that it appears that no one in this division was asked to search for documents. *See also* Pls.' Reply, at 9 (highlighting that there were over forty documents identified in the Hartford *Vaughn* Index mentioning Shott and Ng).

The IRS, however, did ask individuals from the Large and Midsize Business Division to search for responsive documents, including Astengo. Lee Decl., ¶ 5. The IRS also provides a declaration from James David Carroll ("Carroll") that explains the presence of the names of Shott and Ng – who during

8

the relevant times successively served as Deputy Commissioner (International) for the Large Business and International Division – on many of the documents identified in the Hartford *Vaughn* index.  Carroll Decl., ¶ 3.  Carroll states that "treaty exchanges" which were covered by plaintiffs' FOIA requests and led to the exchange of information between the IRS and Australia were "issued" under the names of Shott or Ng, but were in fact signed by Carroll and the resulting case-specific documents were exchanged by individuals at or below Carroll's management level.  Carroll Decl., ¶ 5.

Mr. Carroll also explains that he conducted a supplemental search for responsive documents in his personal files and located twenty responsive pages, only two of which had not yet been identified by the IRS on the Hartford *Vaughn* Index.  *Id.*, at ¶ 6.[4]  Therefore, the IRS has adequately explained that documents from the Large and Mid-Size Business Division were searched for and why, despite the fact that Shott and Ng's names were included on numerous documents identified in the Hartford *Vaughn* Index, they were not included as custodians and asked to personally search for responsive documents.

*Third*, plaintiffs argue that the IRS has not identified 1,100 pages of documents that plaintiffs believe were turned over by the ATO to the IRS as evidence that the search was deficient.  Pls.' Cross-Mot., at 18.   The 1,100 pages at issue were provided by plaintiff Peter Lowy's father to the ATO in Australia, attached to a two-page letter dated July 3, 2008.  Plaintiffs believe that the document identified at LOWY00102 as a July 8, 2008 email "discussing information on a fax received by Australia" is referring to the July 3, 2008 letter which attached the 1,100 pages.  *See* Hartford *Vaughn* Index, at 36.  However, the July 3, 2008 letter itself makes no reference to 1,100 attached pages.  *See* Lowell Decl., Ex. J.  Moreover, plaintiffs do not offer any evidence that the 1,100 pages of documents allegedly attached to the July 3, 2008 letter to the ATO are in the possession of the IRS, but argue that the IRS's failure to "definitively state either that the 1,100 pages of documents do not exist at all, or that the document identified by Plaintiffs did not contain the additional 1,100 pages" creates a material issue of fact.  Pls.' Reply, at 11.  Plaintiffs' argument, however, rests on unsupported inferences.  They are unable to persuasively argue that the fax identified at LOWY00102 *is* related to the July 3, 2008 letter

---

[4]   Mr. Carroll also declares that because the two pages are of a procedural nature but were received from the ATO, Mr. Carroll will consult with the ATO to determine whether the document can be released to plaintiffs.  *Id.*, at ¶ 6; *see also* Hartford *Vaughn* Index, ¶¶ 17-19.

United States District Court
For the Northern District of California

1  sent by plaintiff's Australian relative to the ATO or that the IRS received a copy of the July 3, 2008

2  letter, much less the 1,100 pages allegedly attached thereto.

3      *Fourth*, plaintiffs argue that a "number of issues" surrounding IRS attorney McDougal raise

4  further questions about the reasonableness of the IRS search given that McDougal served for a time as

5  counsel to a Senate subcommittee that was investigating the Lowys, that one of the documents withheld

6  indicates that McDougal discussed a witness list for a Senate Committee hearing, and because Tucker

7  did not indicate that McDougal turned over for production documents that were not duplicates of ones

8  in Lee's possession. Pls.' Cross-Mot., at 18-19. These issues, plaintiffs argue, further call into question

9  why the IRS has not produced any non-public documents showing communications between the IRS

10  and the SPSI , which was investigating the Lowys.

11      McDougal's declaration, however, makes it clear that he did turn over to Tucker all responsive

12  documents that were not duplicative of those already in the possession of Lee. McDougal Decl., at ¶

13  13. That declaration also provides an explanation as to why the IRS has no documents regarding the

14  SPSI's investigation into the Lowys, because neither McDougal nor anyone else at the IRS knew that

15  the Lowys were under SPSI investigation until the witness list was publicly disclosed. *Id.*, at ¶¶ 3, 8-9,

16  11. This explains the reference on the Hartford *Vaughn* Index to a withheld documents where

17  McDougal discussed the "publicly disclosed" witness list with others at the IRS. *Id.*, at ¶ 9.

18      Finally, the fact that additional searches were conducted by the IRS and additional responsive

19  documents located *after* the inception of the litigation – as the Hartford Declarations make clear

20  happened in this case – does not entitle plaintiffs to relief on their claim that the search was deficient.

21  *See, e.g., Envt'l Prot. Servs. v. EPA*, 364 F. Supp. 2d 575, 583 (D.D.C. 2005) (agency's post-appeal

22  production of documents remedied the deficiency in the original search and rendered the search

23  adequate); *see also Carter v. Veterans Admin.*, 780 F.2d 1479, 1480-81 (9th Cir. 1986) (agency's post-

24  litigation production of documents after refusing to search for them pre-litigation rendered action moot);

25  *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (agency's disclosure of documents it had

26  previously withheld did not render its initial search suspect). The evidence demonstrates that the totality

27  of the searches conducted by the IRS was reasonable. Plaintiffs fail to point to any evidence that

28  unidentified responsive documents exist or that there are obvious custodians or sources of responsive

United States District Court
For the Northern District of California

information that have not been included in the search.  Accordingly, the Court finds that the IRS's search was adequate.[5]

## II.     The Applicability of FOIA Exemptions

### A.     Exemption 3 and Tax Convention Information

FOIA's exemption 3 covers documents that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The IRS has claimed this exemption with respect to "tax convention information" exchanged between the IRS and foreign tax administration offices, namely the Australian Taxation Organization ("ATO") and the United Kingdom tax authority ("UKTA").  The IRS contends that this information is properly withheld under  Internal Revenue Code, 26 U.S.C. § 6105(a) making "tax convention information" secret.

Tax convention information includes "information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention."  26 U.S.C. § 6105(c)(1)(E).  The tax conventions at issue here are: (1) Convention between the Government of the United States of America and the Government of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Oct.  1983 ("Australia Convention"); and (2) Convention Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains, March 2003 ("U.K. Convention").  Both the Australia Convention and the U.K. Convention contain clauses that require the United States to refer to its domestic laws to determine the confidentiality of the convention information.  *See* Australia Convention, art. 3(2); U.K. Convention, art.  27, ¶ 1.

The IRS and plaintiffs agree that the applicable domestic law here is Internal Revenue Code § 6103, which generally prohibits the disclosure of "any return or return information."  *See* Def.  MSJ,

---

[5] For this reason, the Court DENIES plaintiffs' motion to be allowed to take discovery into the reasonableness of the IRS's search for responsive documents.

at 13; *see also* Pls.' Cross-Mot., at 20. 26 U.S.C. § 6103(e)(7) provides that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration." Return information is defined as:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A).

### (1)    Tax return information

As noted above, in order to qualify for protection as tax convention information under 6105, the IRS must first demonstrate that the documents it seeks to withhold under 6105 qualify as return information under 6103(b)(2)(A). Plaintiffs argue that "the essential aspect of [the section 6103(b)(2)(A)] definition is that the materials are return information only if they include data received by, collected by or furnished to the IRS 'with respect to a return or with respect to the determination of the existence or possible existence, of liability (or the amount thereof).'" Pls.' Cross-Mot., at 21 (quoting *Kamman v. IRS*, 56 F.3d 46, 49 (9th Cir. 1995)). Plaintiffs contend that the record here, including the declarations and *Vaughn* Index, are "woefully devoid of any defining characteristics at all" that would allow this Court to determine whether or not the documents the IRS has withheld under 6105 are return information. Plaintiffs assert that the IRS should be required to supplement its *Vaughn* Index in order to provide identifying information about each record withheld under 6105 (*e.g.*, date of record, sender/recipient) so that plaintiffs and this Court will be able to test the IRS's determination that the documents are return information.

The IRS counters that it cannot provide any more detailed information regarding the documents because disclosing information about the dates of specific documents or who authored or received them would disclose "tax convention" information in contravention of its treaty duties. The IRS also argues

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

that because plaintiffs' FOIA requests "seek records pertaining to the Service's civil examinations of the Lowys and Beverly Park" and "[c]ivil examinations are conducted to investigate the possible existence of tax liability" the documents sought are, by their very nature, return information under 6103. Def. Reply, at 19. Defendant also relies on the declaration of Douglas W. O'Donnell who asserts that the information exchanged with Australia is "treated . . . as return information" by the IRS. O'Donnell Decl., at ¶ 5.

As an initial matter, the Court agrees with the IRS that it is not required to disclose additional information regarding the specifics of each document withheld. Generally, the IRS bears the burden of establishing that the documents are return information and can do so with "detailed affidavits or oral testimony so long as the evidence offered enables the court to make an independent assessment of the government's claim of exemption." *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979). However, Court has also recognized that details about the withheld documents need not be provided where disclosing them would "'thwart[]'" the claimed exemption's purpose. " *Wiener v. Federal Bureau of Investigation*, 943 F.2d 972, 979 (9th Cir. 1991). Here, providing the detailed sort of information sought by plaintiffs for each specific document withheld under 6105 would disclose the contents of tax convention information which, where properly invoked and as discussed below, allows the IRS to withhold all information about documents received from or that relate to and/or reflect on information received from a foreign entity.

However, while the IRS's position that because of the way plaintiffs defined their FOIA requests – *e.g.*, documents relating to plaintiffs – all responsive documents would necessarily be return information makes some sense logically, the Court is concerned by the lack of a more detailed statement supporting this assertion from an IRS declarant. As noted, the only evidence regarding whether the information withheld under 6105 is return information is from O'Donnell, who asserts that the information exchanged with Australia is "treated . . . as return information" by the IRS. O'Donnell Decl., at ¶ 5. While the IRS need not disclose details about the withheld documents which would thwart the claimed exemption, the Court finds the O'Donnell declaration too "'conclusory and generalized'" to meet its burden here. *Church of Scientology of Cal.,* 611 F.2d at 742 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).

United States District Court
For the Northern District of California

Therefore, the IRS is directed to provide a supplemental declaration, from O'Donnell or another personally familiar with the contents of the documents withheld under 6105, providing a general description of the categories of documents withheld under 6105 and whether they are return information as defined by section 6103(b)(2)(A).

### (2)     Tax convention information

If the documents are properly characterized as return information, the next question is whether they can be characterized as "tax convention information" for the purposes of 26 U.S.C. § 6105.  "Tax convention information" is defined in relevant part as "information exchanged pursuant to a tax convention which is treated as confidential or secret under the tax convention."  26 U.S.C. § 6105(c)(1)(E).  This definition has been held to include two categories of information: (1) information *received* by the IRS from a foreign tax administration; and (2) information *sent* by the IRS to a foreign tax administration provided that the information "relates to and/or reflects on" information it *received* from the foreign tax administration.  *See Pacific Fisheries, Inc. v. Internal Revenue Service*, No. C04-2436JLR, 2009 WL 1249296, at *4 (W.D. Wash.  May 6, 2009), *aff'd sub nom. Pacific Fisheries, Inc. v. United States*, 395 F. App'x.  438 (9th Cir.  2010).

Here, the documents that the IRS has described as *received* from Australia or the United Kingdom are exempt from disclosure, so long as they can be characterized as return information under section 6103, as discussed above.  *See, e.g.*, Hartford *Vaughn* Index, at 3 (Index IRS000993-994: "letter from Australia tax office").

However, the majority of the documents in the Hartford *Vaughn* index are described as "exchanged between [the] United States and Australia."[6]  *See, e.g.,* Hartford *Vaughn* Index, Ex A, at 1; *see also* O'Donnell Decl., at ¶ 5 ("the IRS exchanged approximately 6,648 pages of information with Australia").  It is unclear whether these documents were received from or sent to Australia.  Information *sent* to Australia is only protected insofar as it covers information relating to and/or reflecting information the IRS received from Australia.  *Pacific Fisheries*, 2009 WL 1249296, at *4.  Therefore,

---

[6] According to the IRS submissions, the IRS only "received" documents from the United Kingdom, whereas it "exchanged" documents with Australia.  O'Donnell Decl., at ¶¶ 5, 7.

14

the declarations provided by the IRS are insufficient for the Court to determine whether the withheld documents meet the *Pacific Fisheries* standard. In order to properly withhold documents that were *sent* to Australia, the IRS must make a showing that these documents are tax convention information in that they relate to and/or reflect information that was received *from* Australia.

Additionally, the Hartford *Vaughn* index refers to internal IRS documents withheld under section 6105 which do not, on their face, appear to be tax convention information. *See*, *e.g.*, Hartford *Vaughn* Index, at 34 (referencing internal email chains withheld under 6105 which discuss "information the IRS may release to the taxpayer" and "the revision and status of a flow chart"). Withholding these documents under section 6105 is improper unless the IRS can show that they were sent to a foreign tax administration pursuant to a tax convention *and* that they contain information relating to and/or reflecting information received from the foreign tax administration.

Therefore, the IRS must re-review the documents identified on the Hartford *Vaughn* Index as withheld under 6105 and described as either documents "exchanged" with the ATO or documents that do not reference or indicate that they were related to the ATO document exchanges. After that review, for documents that the IRS believes are covered by the *Pacific Fisheries* test, the IRS must supplement its *Vaughn* Index to specifically state that documents within identified bates ranges were either received from the ATO or that they "relate to and/or reflect on information received from the ATO." To the extent the re-review demonstrates the documents currently withheld under 6105 do not meet the *Pacific Fisheries* test, the IRS must supplement the *Vaughn* index to clarify whether those documents can be withheld under 6103(e)(7) or another exemption and, if so, provide more details on the nature of the document(s) on the revised *Vaughn* index to allow the Court to review the IRS's revised claim of exemption.

### (3)     Serious impairment of tax administration

Finally, in addition to showing that the withheld information is return information *and* is tax convention information, the IRS bears the burden of showing that the release of the withheld materials would "seriously impair tax administration" under § 6103(e)(7) and § 6105(b)(4). "Tax administration" is defined broadly and:

(A) means--
>> (I) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
>> (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

(B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

26 U.S.C. § 6103(b)(4).

The IRS asserts that the documents are properly withheld under § 6103(e)(7) because they would seriously impair federal tax administration by adversely affecting treaty relations between the United States and Australia, and the United States and the United Kingdom. *See Allen Decl.*, at ¶¶ 7-9; *O'Donnell Decl.*, at ¶¶ 11-19. Specifically, Mr. O'Donnell states that disclosing information exchanged between the United States and Australia or the United Kingdom would: "disrupt each government's confidence in the exchange-of-information process[,]. . . chill future cooperation by these tax treaty partners[,]. . . make it less likely the Australian or United Kingdom governments would provide exchange-of-information assistance under the corresponding treaty for U.S. tax cases [,]" and generally "materially impair the effectiveness of [the tax conventions]." O'Donnell Decl., at ¶¶ 9, 18. Mr. O'Donnell also states that "treaty relations with . . . other countries also could be negatively affected if the United States in this case were found unable to honor its commitments to Australia and the United Kingdom on confidentiality and secrecy." *Id.* at ¶ 18. Further, Mr. O'Donnell refers to communications from both Australia and the United Kingdom expressing their expectations that communications between the countries pursuant to the tax convention would remain confidential. *Id.* at ¶¶ 9-10.

Plaintiffs contend that these justifications are insufficient. Pls.' Cross-Mot., at 24. The language that Mr. O'Donnell used is strikingly similar to the language he used in *Pacific Fisheries*, 2009 WL 1249296.[7] In *Pacific Fisheries*, the court held that "Mr. O'Donnell's conclusions are entitled to some

---

[7] Mr. O'Donnell provided declarations in *Pacific Fisheries* asserting that treaty relations between the United States and Russia would be impaired by disclosure of the withheld documents. As in the instant case, he indicated that the treaty partner expected confidentiality and that disclosing withheld documents would "chill future cooperation[,] . . . make it less likely that the Russian government would

**United States District Court**
For the Northern District of California

deference in light of his experience and the fact that "the court is not in a position to independently determine what actions on the part of the United States government would or would not impair treaty relations with another nation." *Id.* In order to undermine Mr. O'Donnell's conclusions, the plaintiffs would have had to "[bring] forth contrary evidence controverting Mr. O'Donnell's justifications or suggest[] that there is any bad faith on the part of the IRS." *Id.* at *3. Here, as in *Pacific Fisheries*, the plaintiffs have provided no evidence of bad faith on the part of the IRS. Nor have they shown contrary evidence in the record that would controvert the IRS's justifications for nondisclosure, aside from the requirement discussed above that the documents sent to Australia must "relate to or reflect on" information received from Australia. Therefore, provided the IRS shows that the withheld documents are tax return and tax convention information in amended submissions, this Court will give deference to Mr. O'Donnell's determination that releasing the withheld documents would seriously impair tax administration.

### B.       Exemptions 3 and 7(A) and Return Information

### (1)       Tax return information

The IRS has also withheld several documents as return information under 26 U.S.C. § 6103(e)(7) that are not tax convention information subject to protection under 26 U.S.C. § 6105. *See, e.g.*, Hartford *Vaughn* Index, at 8, 14-16, 35-40. As discussed above, in order to properly withhold documents under Internal Revenue Code § 6103(e)(7), the IRS must demonstrate that the withheld documents are "return information" in that they must be "received by, recorded by, prepared by, furnished to, or collected by the [IRS] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof)." 26 U.S.C. § 6103(b)(2)(A). The parties generally reassert their arguments made above. Plaintiffs assert that "stating simply that the materials contain 'information gathered or prepared by the Service to determine or collect a potential tax liability'" (quoting Def. Mot. for Summ. J.) is insufficient to establish the documents are return information. Pls.' Cross-Mot., at pgs. 22-23 (quoting *Kamman*, 56 F.3d at 49). In doing so, plaintiffs misread *Kamman*.

provide exchange-of-information assistance" and also potentially negatively affect treaty relations with other similarly situated treaty partners. *Pacific Fisheries*, 2009 WL 1249296, at *2.

In *Kamman*, the court held that the documents could not be characterized as return information because the documents in question were not actually "furnished to the IRS with respect to the determination of the existence . . . of liability," but were provided after the taxpayer's liability had already been determined.  *Kamman*, 56 F.3d at 49 (internal quotations omitted).  Here, the IRS has stated in oral argument, in affidavits, and in its pleadings that the civil examination of plaintiffs is still ongoing, so, unlike *Kamman*, tax liability has not yet been established.

Moreover, the IRS has submitted the declaration of Marie Allen, Supervisory Revenue Agent, which explains that if any of the information at issue were released to plaintiffs it would allow plaintiffs to "determine the nature, direction, scope and the strategies and theories that may be utilized by the Government," in their continued investigation or future prosecution of the Lowys. *See* Allen Decl., ¶ 6.

Finally, unlike the situation with respect to the tax convention information, where no specific information was provided regarding the withheld documents, the IRS has provided plaintiffs with additional information about each of the documents on the Hartford *Vaughn* Index – which are not covered by 6105 – to enable the Court to conclude the information withheld is return information relating to the civil examination of the Lowys. *See, e.g.*, Hartford *Vaughn* Index at 35 (". . . discussing . . . whether the examination is affected"; "discussing what to include in a summons and the revision of the same summons").[8]  Therefore, the Court finds that all of the documents withheld under section 6103(e)(7) that are not also withheld under section 6105, are properly classified as return information.

**(2)      Serious impairment of tax administration**

The IRS asserts through the declarations of its employees James Hartford, attorney in the Office of the Associate Chief Counsel and Marie Allen, that "disclosure of certain of the documents or portions

---

[8] While the Hartford *Vaughn* index contains documents described more generally than the above examples, the Court bears in mind *Wiener*'s caveat that additional information need not be provided if it would thwart the claimed statutory exemption's purpose. *See Wiener*, 943 F.2d at 979. For example, the IRS claims section 6103(e)(7) protection for an "October 17, 2007 email between Mr.  Pak, Mr. Rillo, Ms.  Lee, and Mr.  Astengo requesting information on an entity."  Hartford *Vaughn* Index, at 38. Though the "entity" is not named, it stands to reason that the omission was in order to prevent plaintiffs from gaining information as to which entities were relevant to their ongoing civil examination.  On a related note, while the Hartford *Vaughn* index does not explicitly refer to the email as related to the civil examination of plaintiffs, both the Allen declaration and common sense dictate that it must be, or else there would be no reason to include it in the index of relevant documents.

thereof would seriously impair federal tax administration." Allen Decl., ¶ 5; *See* Hartford Decl., ¶¶ 35, 38. Ms. Allen states that "[r]eleasing any of the following documents would allow Plaintiffs to determine the nature, direction, and scope of the ongoing civil tax examination, and the strategies and theories that may be utilized by the Government should this case be litigated" and would "provide Plaintiffs with an unfair advantage in that it would prematurely enable them to craft explanations or defenses based upon those strategies and theories that the Government may present in litigation." Allen Decl., ¶ 6. Plaintiffs argue that these statements "are nothing but generic and meaningless words" that neither refer to any particular document nor explain why they should not be disclosed, so they are "woefully insufficient to establish that tax administration would be seriously impaired by any of the material being withheld from Plaintiffs." Pls.' Cross-Mot., at 24-25.

Plaintiffs cite to *Grasso v. IRS*, 785 F.2d 70, 76 (3d Cir. 1986), for the proposition that "[b]oilerplate claims that disclosure (1) would prematurely reveal evidence, (2) might indicate which items of evidence the IRS will rely upon in future proceedings, and (3) might also refresh the plaintiff's recollection" are insufficient to exempt the documents from disclosure.[9] Pls.' Cross-Mot., at pg. 24. In *Grasso*, plaintiff sought access to an IRS memorandum from an interview plaintiff gave to an IRS agent. The district court reviewed the memorandum *in camera* and found that the withheld information was only what the plaintiff was alleged to have said to the interviewing agent. *Id.* at 76. The district court held that the release of the plaintiff's own statements would not seriously harm tax administration, and the Third Circuit affirmed. *Id.* Here, the withheld documents are not the plaintiffs' interview statements, they are the contents of the IRS's administrative file for the IRS's examination of plaintiffs. Given the scope of the information plaintiffs seek, and the IRS declarations explaining that release of the administrative file materials would impair their ongoing examination, the Court finds that the release of the requested documents could "disclose the direction of potential investigation to be followed" and

---

[9] While the cited portion comes from the *Grasso* Court's discussion of Exemption 7(A), the Court states that "[a]lthough there are situation where Exemptions 3(B) and 7(A) would not be coextensive . . . in this case analysis of Exemption 3 does not differ significantly from the analysis of Exemption 7(A) undertaken." *Grasso*, 785 F.2d at 77. The same is true here and the Court applies the same analysis to the question of whether the IRS has shown that release of the withheld documents would "impair tax administration" under 3(B) or "interfere with IRS enforcement proceedings" under 7(A).

United States District Court
For the Northern District of California

1    they can properly be withheld.  *See id.*  at 77.

2           Plaintiffs also argue that "because the information sought by Plaintiffs is that which Plaintiffs

3    or their family members already have submitted to government authorities," its release would not impair

4    tax administration.  Pls.' Reply, at  14-15; *see also* Pls.' Cross-Mot., at  32-33.  They claim that

5    "members of the Lowy Family in Australia provided thousands of pages of documents to the ATO,

6    which undoubtedly has transferred this information to the IRS pursuant to the Tax Treaty between the

7    two countries" and speculate that "[i]t therefore is highly likely that a portion of the remaining

8    documents the IRS is withholding are known to Plaintiffs."  Pls.' Cross-Mot., at 32.  They cite to

9    *Grasso*, 785 F.2d at 77, for the proposition that disclosure of information already known to the FOIA

10   requester would not impair tax administration.  In *Grasso*, the FOIA requester sought disclosure of a

11   memorandum of an interview he had given.  *Grasso*, 785 F.2d at 72.  The court stated that "[t]he typical

12   Exemption 7(A) situation arises when the documents sought are those generated within the agency or

13   otherwise 'not in the possession of known or potential defendants.'"  *Id.*  at 77 (quoting *Campbell v.*

14   *Dep't of Health and Human Services*, 682 F.2d 256, 262 (D.C. Cir. 1982)).  However, the court also

15   acknowledged that "in some situations the memorandum of the individual's own statement may be

16   exempt from disclosure, as, for example, *when it discloses the direction of potential investigation to be*

17   *followed*."  *Id.*  (emphasis added).  Unlike in *Grasso*, where the claimant requested a specific document

18   containing information he already knew, here plaintiffs merely speculate that it is "highly likely" that

19   "a portion" of the withheld documents are known to them.  Pls.' Cross-Mot., at 32.

20          Finally, plaintiffs rely on *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 982 (9th Cir.

21   1991) for the proposition that the IRS must provide a "description of the withheld information sufficient

22   to enable the FOIA requester to challenge the agency's understanding of the scope of section 6103

23   reflected in the decision to withhold."  Plaintiffs argue that the IRS should be required to show why the

24   withholding of each document - or perhaps category of document - is necessary to prevent giving

25   plaintiffs an unfair advantage or otherwise impair the IRS examination.  However, they fail to point out

26   that *Wiener* specifies that the withholding agency should disclose "'as much information as possible

27   *without thwarting the [claimed] exemption's purpose*.'" *Id*. at 979 (quoting *King v. Dep't of Justice*, 830

28   F.2d 210, 223-24 (D.C. Cir. 1987)) (emphasis added).  The *Wiener* court applied this reasoning to allow

the FBI to withhold tax return documents because "if the withholding agency were to reveal the precise nature of the tax return information, the confidentiality guaranteed by section 6103 would be compromised." *Id.* at 982-83. Here, section 6103(e)(7) contains the explicit instruction that the return information is subject to disclosure only if the IRS "determines that such disclosure would not seriously impair federal tax administration." The IRS declarants explain that the release of the information withheld, which is essentially the IRS administrative file, would seriously impair federal tax administration by allowing plaintiffs "to determine the nature, direction, scope and the strategies and the theories that may be utilized" in potential impending litigation; by allowing plaintiffs "earlier and greater access to information about the examination than they would otherwise be entitled to receive"; and by providing plaintiffs "with an unfair advantage in that it would prematurely enable them to craft explanations or defenses based upon these strategies and theories that the Government may present in litigation."[10] Allen Decl., at ¶ 6.

This case is similar to *Shannahan v. I.R.S.*, 680 F. Supp. 2d 1270 (W.D. Wash. 2010) ("*Shannahan III*"). In *Shannahan III*, the IRS argued that documents were properly withheld pursuant to Exemption 3 because their disclosure would seriously impair federal tax administration by allowing the defendants to: (1) "determine the nature, direction, scope, and limits of the criminal proceedings, and the strategies and theories utilized by the government"; (2) have "earlier and greater access to information about the proceedings than they would otherwise be entitled to receive"; (3) "craft explanations or defenses based upon the government's analysis"; and (4) "conceal or disguise income." *Id.* at *4. The court ultimately held that these justifications supported withholding the documents and that the IRS's determination about potential harms to tax administration was "entitled to some deference." *Id.* at 8. Here, the IRS has made similar justifications regarding the ongoing civil examination of plaintiffs.

However, the *Shannahan III* court reached this decision only after the IRS "describ[ed] in detail

---

[10] In arguing that the IRS needs to provide more information on why each category of document could impair tax administration if released, plaintiffs cite to *Campbell* for the proposition that an agency "must show something more than a direct relationship between agency records and a pending investigation in order to demonstrate that disclosure would interfere with enforcement proceedings." 682 F.2d at 261. However, in *Campbell* the plaintiff was a third party, rather than a target of the law enforcement proceeding in question. *Id.* at 265.

both the type of information contained in the [withheld documents] and the source of the information." *Id.* at *8. Specifically, the IRS provided a declaration stating that the information "details and documents a vast majority of the evidence obtained by the government for use in the [plaintiffs'] criminal trial and was compiled and organized by the U.S. government." *Id.* The declaration went on to describe that the information contained "charts detailing financial information . . . , summaries of the information, and agent notes." *Id.* Here, where the IRS claims exemption under section 6103(e)(7) without recourse to section 6105, it has described the withheld documents with enough detail for plaintiffs and the Court to determine both the type and source of the information. *See*, *e.g.*, Hartford *Vaughn* Index, at 35 ("July 15, 2008 internal IRS email chain among [IRS employee names and titles omitted] discussing the publicly released witness list for a Senate committee hearing and whether the examination is affected"). Like in *Shannahan III*, if the documents were released, plaintiffs might be able to glean information about the civil examination that they would not otherwise be entitled to. As the IRS has provided sufficient information about the nature of the withheld documents and stated, with specificity, that it would seriously impair federal tax administration by revealing details of an ongoing investigation, the documents are properly withheld.

### (3)     Exemption 7(A)

Exemption 7(A) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) is subsumed in the discussion of Exemption 3 because if a document is properly withheld for seriously impairing tax administration, it will almost always meet Exemption 7(A)'s standard of interfering with law enforcement proceedings. *See Grasso*, 785 F.2d at 77. Plaintiffs contend that the IRS has not provided enough information for the Court to determine whether or not they have met this standard. Pls.' Cross-Mot., at 25-26. However, for the reasons the Court described above, the Court disagrees and holds that the IRS's submissions show that release of the documents would interfere with the civil examination so as to fall under Exemption 7(A). This comes with the caveat that, to the extent the IRS upon re-review finds that it can no longer claim exemption under 6105

for particular documents, the Hartford *Vaughn* Index must be supplemented with additional specific information demonstrating that the documents are properly withheld under 6103(e)(7) and 7(A).

### C.      Exemption 5

Exemption 5 of FOIA applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  It "covers the attorney client privilege, the attorney work product privilege, and the executive 'deliberative process' privilege." *Maricopa Audobon Society v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)).  Here, the IRS claims that a number of the withheld documents are covered by the deliberative process privilege and/or the attorney-client privilege.  Plaintiffs claim that the descriptions given in the Hartford *Vaughn* Index are vague and insufficient to show that they are covered by these privileges.  However, as all of the documents withheld under Exemption 5 are also withheld pursuant to Exemption 3 under either 26 U.S.C. §§ 6105 or 6103(e)(7), discussed above, the Court does not reach a discussion of Exemption 5.  If, after the IRS provides the supplemental information required above, the Court finds that documents are improperly withheld under Exemption 3 or that certain documents are only potentially withheld under Exemption 5, the Court will address those withholdings at that time.

### D.      Exemption 6 and Exemption 7(C)

Exemption 6 and Exemption 7(c) both exempt the release of records which would constitute an "unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C).  Exemption 6 covers "personnel and medical files and similar files" and Exemption 7(c) covers "records or information compiled for law enforcement purposes." *Id*.  The Hartford *Vaughn* Iindex and the IRS's pleadings show that it is "claiming Exemption 7(c) for every portion of a record it exempts under Exemption 6." Def. MSJ, at  19; *see also* Hartford *Vaughn* Index. The standard for Exemption 6 is higher in that it requires the disclosure of the files to "constitute a clearly unwarranted invasion of personal privacy" whereas Exemption 7(c) only requires that the disclosure "could reasonably be expected to constitute" such an invasion.  Where the IRS has invoked Exemptions 6 and 7(c), they take two approaches to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

describing the documents in the Hartford *Vaughn* Index.  Under the first approach, where the document is also withheld under section 6105, the IRS provides no additional information on why or what has been withheld, in light of their concerns that disclosing any identifying characteristics about a document would disclose substantive matters in violation of its Tax Convention duties.  Under the second approach, for documents only covered by 6103(e)(7), the IRS has provided a brief description of the withheld material, in the "Notes" column of the Hartford *Vaughn* Index, explaining that the redacted information is mobile telephone numbers, bank account numbers of third parties and similar types of information.  *See, e.g.*, Hartford *Vaughn* Index, at 34-35, 37-40.

The Court finds the IRS's approaches appropriate.  With respect to the documents covered by section 6105, the Court agrees that the IRS need not provide additional information as to the specific information also covered by Exemptions 6 and 7(c) because doing so would thwart the purpose of the exemption under 6105.  With respect to the second approach, the Court finds that the information provided in the "notes" column of the Hartford *Vaughn* Index provides sufficient justification for the withholding and/or redaction of personal information under Exemption 6 and, therefore, need not address Exemption 7(C).  However, consistent with the Court's discussions above, if the IRS determines that certain documents are no longer protected by section 6105, the IRS must provide similar justifications in the "notes" section of its Index to identify and explain any withholdings under Exemptions 6 and 7(C).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for summary judgment (Docket No. 24) and DENIES plaintiffs' motion for summary judgment and limited discovery (Docket No. 30).

Defendant shall supplement their submissions to the Court to demonstrate that those documents withheld pursuant to Exemption 3 under 26 U.S.C. § 6105 are "return information" contemplated by 26 U.S.C. § 6103(e)(7) and "tax convention information" as contemplated by 26 U.S.C. § 6105 and defined in *Pacific Fisheries,* 2009 WL 1249296.  If they are unable to meet the *Pacific Fisheries* test for any documents, the IRS must supplement the Hartford *Vaughn* Index to provide additional information

showing that the documents, or portions thereof, are properly withheld under section 6103(e)(7), Exemption 6, and/or Exemption 7(C).

**IT IS SO ORDERED.**

Dated: March 30, 2011

SUSAN ILLSTON
United States District Judge